UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARC R. PAGE,
:
Plaintiff,
:
: PRISONER
v. : Case No. 3:05CV1271 (MRK)
:
THERESA LANTZ, et al.[1]
:
Defendants. :

## RULING AND ORDER

Plaintiff Marc R. Page, a Connecticut inmate confined at the Osborn Correctional Institution, commenced this civil rights action *pro se* pursuant to 28 U.S.C. § 1915. Mr. Page alleges that an attorney from Inmates' Legal Assistance Program ("ILAP") refused to assist him in litigation after Mr. Page sought to become a party in a pending state court lawsuit against ILAP. Mr. Page contends that Defendants then denied him access to the courts when they failed to appoint a substitute legal assistance provider to assist Mr. Page in his pending litigation. Defendants have filed a Motion for Summary Judgment [doc. # 29]. For the reasons discussed below, Defendants' motion is granted.

### I.

As required by the District's Local Rules, at the time they filed their motion for summary judgment, Defendants informed Mr. Page of the contents of a proper response to a motion for summary judgment and provided copies of the relevant rules by notice issued on November 30,

---

[1] The named Defendants in the Amended Complaint [doc. # 14] are Department of Correction Commissioner Theresa Lantz, Brian K. Murphy, Remi Acosta, John J. Armstrong, Unit Manager Hannah, Daniel Martin and Major Hall. The Court dismissed all claims against Defendants Inmates' Legal Assistance Program, the Connecticut Department of Correction, and Attorneys Sydney Schulman and Kenneth Speyer, who were included in the original Complaint [doc. #1], on September 26, 2005 [doc. # 7].

2006. *See* Notice [doc. # 30]; D. Conn. L. Civ. R. 56(b). Mr. Page submitted detailed responses to the Defendants' motion, along with documentary evidence, but he did not submit the required Local Rule 56(a)(2) Statement. *See* Plaintiff's Opposition [doc. # 36]. If, as here, the nonmoving party does not submit a Local Rule 56(a)2 Statement, the moving party's factual statements are deemed admitted. D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in [the moving party's Rule 56(a)1] statement will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2."). Here, however, the Court need not rely on this Local Rule provision because it has confirmed that the factual assertions in Defendants' Local Rule 56(a)(1) Statement are supported by both the documentary evidence submitted by Defendants as well as that submitted by Mr. Page. Accordingly, the following facts are taken from Defendants' Local Rule 56(a)1 Statement [doc. # 29-4]. As is apparent from the parties' filings, there are no genuine issues of material fact.

The Connecticut Department of Correction has contracted with ILAP to provide legal assistance to Connecticut inmates. The contract limits assistance to matters that ILAP determines present a *prima facie* case. Services are provided within the context of the Rules of Professional Conduct and the canons of professional ethics. *See* July 2002-June 2003 Contract, Pl.'s Opp'n [doc. # 36], Ex. P2, Part 2 ¶¶ 2, 3, 15.

On August 27, 1999, Mr. Page filed in state court a habeas corpus petition challenging his medical care. Mr. Page presented the merits of his claims in a trial held on May 2, 2002. The state court found that Mr. Page had received adequate medical care and dismissed his habeas petition in a written decision dated October 7, 2002. *Page v. Warden*, No. CV99-0430020s, 2002 WL 31440801 (Conn. Super. Ct. Oct. 7, 2002) [doc. # 116]. Thereafter, Mr. Page filed a petition for

certification to appeal the dismissal of his habeas petition to the Connecticut Appellate Court. The petition for certification was denied on November 14, 2002. *See id.* [doc. # 120].

In September 2002, Mr. Page filed a motion seeking leave to join as a plaintiff in an ineffective assistance of counsel class action filed against ILAP in state court. Mr. Page sent a copy of his joinder motion to ILAP, which at the time was assisting Mr. Page in connection with his medical habeas petition, a state mandamus action seeking to remedy alleged institutional violations by which the Connecticut Department of Correction interfered with prisoners' access to the courts, and a motor vehicle tort claim. After receiving Mr. Page's motion to join the lawsuit against ILAP, an attorney from ILAP declined Mr. Page's requests for any further legal assistance. The attorney informed Mr. Page that his participation in the lawsuit against ILAP created a conflict of interest and that ILAP attorneys were therefore precluded, under the Rules of Professional Conduct, from providing him legal assistance. The attorney also told Mr. Page that if he withdrew his joinder motion and informed ILAP by letter that he no longer was pursuing any legal action against ILAP or any program attorneys, he could again receive assistance from ILAP. Mr. Page did not withdraw his joinder motion or send the requested letter. As a consequence, ILAP did not assist Mr. Page in preparing his petition for certification to appeal the denial of his medical habeas petition. Mr. Page made various requests that ILAP and the Connecticut Department of Correction provide an alternative form of legal assistance, and when they refused, Mr. Page filed this action.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

3

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in the original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the plaintiff, *see Anderson*, 477 U.S. at 255. If the moving party carries its burden, the party opposing summary judgment "may not rest upon . . . mere allegations or denials . . . ." Fed. R. Civ. P. 56(e). Rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. *See Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). Despite this liberal interpretation, however, a "bald assertion,

4

completely unsupported by evidence," cannot overcome a properly supported motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## III.

Although Mr. Page includes many allegations in his Amended Complaint regarding compliance with state law and the terms of the contract with ILAP, he specifically states that he does not ask the Court to enforce or interpret state law. *See* Am. Compl. [doc. # 14] at 14. Thus, the only claim in this case is Mr. Page's assertion that Defendants denied him his constitutional right of access to the courts when they did not provide him with an alternative legal provider following ILAP's determination that it could not provide Mr. Page with further legal assistance because of the conflict created when Mr. Page sought to join a lawsuit against ILAP.

"Prisoners, including pretrial detainees, have a constitutional right of access to the courts, grounded, as relevant to prisoners, in the constitutional guarantees of equal protection and due process." *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (internal quotations and citations omitted). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (*modified on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996)). Although prison libraries and legal assistance programs are two ways of ensuring such access, in *Lewis* the Supreme Court made clear that such programs "are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis*, 518 U.S. at 351 (internal quotation marks omitted) (quoting *Bounds*, 430 U.S. at 825). Further,

5

because "meaningful access to the courts is the touchstone" of this inquiry, an inmate plaintiff must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.

Therefore, to survive summary judgment, Mr. Page must present evidence demonstrating that he was denied his constitutional right of access to the courts *and* that he suffered actual injury as a result – that is, that Defendants took or were responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002). By way of example, Mr. Page could demonstrate an actual injury by providing evidence "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of the deficiencies in the prison's legal assistance facilities, he could not have known," or that he was unable to file a complaint alleging actionable harm because the legal assistance program was so inadequate. *Lewis*, 581 U.S. at 351. However, an inmate's conclusory assertion that he suffered prejudice is insufficient to establish actual injury. *See, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (in the context of retaliation claims by prisoners); *see also Arce v. Walker*, 58 F. Supp. 2d 39, 44 (W.D.N.Y. 1999) (citing *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999)).

In its September 2005 Ruling and Order [doc. # 7] dismissing Mr. Page's Complaint under 28 U.S.C. § 1915(e)(2)(B), the Court directed Mr. Page to allege in his Amended Complaint facts demonstrating an actual injury. *See Page v. Lantz*, No. 3:05CV1271(MRK), 2005 WL 2548254, at *6 (D. Conn. Sept. 26, 2005). Mr. Page has identified four state court cases pending at the time ILAP stopped providing legal assistance to him: a habeas petition regarding medical care, an action

for mandamus, a tort action regarding a motor vehicle accident, and the action against ILAP. *See* Am. Compl. [doc. # 14] at 2-4, 6. He also alleges that he was unable to file a state habeas action in 2004. *See id.* at 7-8.

Mr. Page's access to the courts claim fails for two principal reasons.[2] First, an inmate has a constitutionally protected right of access to the courts only to pursue challenges to his conviction by direct appeal, petitions for writ of habeas corpus or civil rights actions challenging the conditions of his confinement. *See Lewis*, 518 U.S. at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* Mr. Page states that although he was able to file his mandamus action, the case languished in state court after ILAP stopped assisting him. In its September 2005 ruling, the Court determined that Mr. Page's mandamus claim[3] and his effort to join the lawsuit against ILAP do not implicate a challenge to the conditions of Mr. Page's confinement. In addition, Mr. Page's tort action arising from a motor vehicle accident does not relate to the conditions of his confinement. Therefore, the mandamus, tort, and ILAP cases cannot serve as a basis for any claim by Mr. Page of a denial of his constitutional right of access to the courts. *See Bourden v. Loughren*, 386 F.3d 88, 96 (2d Cir. 2004) ("The right of access to the courts requires that prisoners *defending against*

---

[2] As Defendants point out, Mr. Page has also failed to demonstrate personal involvement in an alleged denial of constitutional rights by any of the Defendants other than possibly former Commissioner Armstrong. Defendants' Memorandum in Support [doc. # 29-1] at 17-21. However, the Court need not reach that issue since Mr. Page's claim fails on the merits in any event.

[3] Although Mr. Page's mandamus claim could be read as asserting an ineffective assistance of counsel claim, nowhere does he allege that the ineffective assistance affected the validity of his underlying conviction or the conditions of his confinement.

*criminal charges or convictions (either directly or collaterally) or challenging the conditions of their confinement* . . . not be impeded from presenting those defenses and claims for formal adjudication by a court.") (emphasis added); *Friedl v. City of New York*, 210 F.3d 79, 86 (2d Cir. 2000) ("In other words, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.") (quoting *Lewis*, 518 U.S. at 355).

Second, Mr. Page has not shown that he has sustained actual injury in connection with his habeas petitions. As to his medical habeas action in state court, Mr. Page was given a trial and the court dismissed the petition on the merits. *See Page v. Warden*, 2002 WL 31440801. The state court docket reflects that Mr. Page then filed a motion for waiver of fees on appeal to appeal the dismissal to the Connecticut Appellate Court, which was granted, and a petition for certification, which was denied on the merits, not on any procedural ground. *See id.* [docs. ## 120, 119]. Mr. Page provides no evidence that he pursued the matter further. *See Lewis*, 518 U.S. at 352 ("[T]he inmate must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim.").

Instead, Mr. Page argues that if ILAP had assisted him or if Defendants had provided alternative legal assistance, he could have submitted a more persuasive petition that may have resulted in the granting of his certification of appeal. However, Mr. Page's inability to litigate as effectively as he may have preferred is insufficient to demonstrate an actual injury. *See Lewis*, 518 U.S. at 354 ("These statements [in *Bounds*, 430 U.S. at 825-26 & n.14,] appear to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court. These

8

elaborations upon the right of access to the courts have no antecedent in our pre-*Bounds* cases, and we now disclaim them.") (citation omitted); *Ford v. Phillips*, No. 05 Civ. 6646 (NRB), 2007 WL 946703, at *13 (S.D.N.Y. Mar. 27, 2007) (holding insufficient to establish an actual injury "the mere suggestion, without any supporting argument or evidence," that, but for defendants' actions, plaintiff would have succeeded on his motion to set aside the verdict or that he would have received a lighter sentence). Mr. Page has provided no evidence that Defendants' actions prevented him from filing a petition or appeal, or caused him to miss a deadline or otherwise fail to comply with an order from any court. Given the facts found by the state court regarding Mr. Page's medical habeas petition, there is also no reason to believe that more effective legal efforts would have convinced the appellate court to grant the certification of appeal. *See Page v. Warden*, 2002 WL 31440801, at *1. Thus, Mr. Page has not demonstrated injury sufficient to support his claim of an unconstitutional denial of access to the courts.

Mr. Page also asserts that he was unable to file a state habeas petition in 2004 and provides a letter from a state court clerk returning the petition to him. The letter explained that, if Mr. Page was trying to file a new action, he must submit a notarized copy of the complaint as well as a notarized application for waiver of fees. The clerk provided a form copy of a petition for habeas corpus, which included the application for waiver of fees, and instructed Mr. Page to send the corrected documents to the court in Rockville. *See* Pl.'s Opp'n [doc. # 36], Ex. P9.

If the state court had simply denied the petition because it was not technically correct, Mr. Page may have been able to demonstrate an actual injury, which, however, is an issue that the Court need not decide because that did not occur. Instead, the state court afforded Mr. Page the opportunity

9

to resubmit his petition in proper form for consideration of his claims. Mr. Page provides no evidence that he resubmitted the documents, and he cannot transform his own failure to correct identified technical deficiencies and resubmit his petition into an actual injury from official action by Defendants. Further, as Defendants noted in their Reply Memorandum, the very fact that Mr. Page was able to submit correctly notarized documents in this and other lawsuits indicates that he is aware of the appropriate procedure. Defendants' Reply Memorandum [doc. # 41]. Mr. Page has not alleged any specific conduct by Defendants that caused him to be unable to comply with the filing requirements in this instance. Accordingly, Defendants are entitled to summary judgment on the access to courts claims.

## IV.

Mr. Page also argues that he was denied equal protection under the law because the State provided legal assistance to all other inmates through ILAP but denied such assistance to him. This claim lacks merit. Because Mr. Page is not a member of a protected class, the Court construes Mr. Page's equal protection claim as an *Olech*-style "class of one" claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To prevail, Mr. Page would need to show that he had been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. The Second Circuit has interpreted this requirement strictly, requiring an "extremely high" level of similarity between the plaintiff and the similarly situated comparison group. *Neilson v. D'Angelis*, 409 F.3d 100, 104-05 (2d Cir. 2005) (demanding plaintiff show that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate

government policy"). Although the Second Circuit notes that this inquiry is usually fact-intensive, *see Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006), here Mr. Page has failed entirely to allege that similarly situated prisoners – that is, those who have also filed suit or claims against ILAP – continued to receive legal assistance from ILAP while he did not. Thus, any equal protection claim fails as a matter of law.

## V.

There are a few remaining matters that the Court must address. For one, while Defendants' Motion for Summary Judgment [doc. # 29] was pending, Plaintiff also filed a Motion for Injunctive Relief [doc. # 35]. In that motion, Mr. Page claimed that a prison counselor delayed sending his legal mail, yelled at him, and then retaliated for Mr. Page's filing of a grievance by having him transferred to a segregation block. This case has been pending for over three years and no retaliation claims have previously been raised. Indeed, the Court has permitted Mr. Page to amend his complaint and to date he has never included a claim for retaliation. In view of the Court's ruling on Defendants' Motion for Summary Judgment, the Court will not consider these claims at this time. Mr. Page may bring a new action if he desires to pursue his claim, but the Court would note that the claim is likely moot, if, as Defendants represent, Mr. Page's mail has been sent and he is no longer under the supervision of the counselor in question. Thus, the Court denies Mr. Page's Motion for Injunctive Relief without prejudice to renewal in another action.

Plaintiff also filed two Motions for Consideration [docs. ## 45, 46]. The first motion [doc. # 45] deals with two issues: Plaintiff's Memorandum in Opposition to Defendants' Motion for Leave to File Reply Brief Out of Time *Nunc Pro Tunc* [doc. # 38], and Plaintiff's Response to Defendants'

Memorandum in Opposition to Plaintiff's Motion for Injunctive Relief [doc. # 39]. As the Court has already granted Defendants' *Nunc Pro Tunc* Motion [doc. # 38], Mr. Page's Memorandum in Opposition is moot. Mr. Page's Response repeats the retaliation claims made in his Motion for Injunctive Relief. Thus, Plaintiff's first Motion for Consideration [doc. # 45] is dismissed in part as moot and dismissed without prejudice in part.

Mr. Page's second Motion for Consideration [doc. # 46] reiterates Mr. Page's retaliation claim and also seeks to provide additional evidence in opposition to Defendants' Motion for Summary Judgment [doc. # 29]. To the extent the motion raises a retaliation claim, it is dismissed without prejudice for the reasons stated above, and to the extent it adds more evidence to Plaintiff's Opposition, it is granted.

## IV.

Defendants' Motion for Summary Judgment [doc. #29] is GRANTED. Any claim for denial of equal protection of the laws is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's Motion for Injunctive Relief [doc. # 35] is DENIED WITHOUT PREJUDICE. Plaintiff's first Motion for Consideration [doc. # 45] is DISMISSED IN PART as moot and DISMISSED IN PART WITHOUT PREJUDICE. Plaintiff's second Motion for Consideration [doc. # 46] is DISMISSED IN PART as moot and DISMISSED IN PART WITHOUT PREJUDICE. **The Clerk is directed to enter judgment and close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: June 25, 2007.**